878 So.2d 1020 (2004)
Leo Luther DAVIS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01738-COA.
Court of Appeals of Mississippi.
March 30, 2004.
Rehearing Denied June 8, 2004.
Certiorari Denied July 29, 2004.
*1022 Kay L. Wilkerson, Gulfport, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before McMILLIN, C.J., IRVING and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. Leo Luther Davis was convicted by a jury of the Circuit Court of Harrison County of two counts of sexual battery and sentenced to serve two terms of twenty-five years, running concurrently, in the Mississippi Department of Corrections. Feeling aggrieved by this judgment, Davis appeals and asserts the following issues: (1) whether the trial court erred when it allowed Dr. Matherne to testify about his "fist" technique, (2) whether the trial court erred when it found that the tender years exception was applicable and allowed Lori Ehlers to testify as to statements made by the victim as an exception to the hearsay rule under M.R.E. 803(25), (3) whether the trial court erred when it allowed the testimony of Dr. Matherne as an exception to the hearsay rule under M.R.E. 803(4), (4) whether the trial court erred in not granting *1023 his motion for a directed verdict or peremptory instruction, and (5) whether the trial court erred in not granting his motion for new trial.
¶ 2. Ascertaining no error, we affirm.

FACTS
¶ 3. On December 31, 2000, Davis went to the Biloxi home of his deceased best friend, George Stille, who had died on December 5, 2000. After George's death, the home was occupied by Reiko Stille, George's mother; Sabrina Stille, George's wife; and his three children. One of George's children was a nine-year-old girl named A.H.
¶ 4. Davis, George's wife, and others were celebrating New Year's Eve. A.H. was in bed in her bedroom that evening. Davis came into A.H.'s bedroom, felt her forehead, cheeks, neck, and chest. He then left A.H.'s room but returned shortly thereafter. He pulled down A.H.'s bed covers, pulled up her shirt, and pulled down her panties. He touched A.H.'s vagina, inserted his finger into it, and told her that she was beautiful. He then withdrew his finger and began licking her vagina. After a couple of minutes, he got up and walked back into the television room. A.H. got up, went to the restroom, and washed herself.
¶ 5. On June 18, 2001, a Harrison County grand jury indicted Davis on two counts of sexual battery against a child under the age of fourteen years. On March 5, 2002, a three-day trial began which ended in a mistrial after jurors were unable to reach a unanimous verdict. A second trial was conducted on August 14-15, 2002, where Davis was convicted of both counts and sentenced to two terms of twenty-five years to run concurrently. Davis soon after filed a motion for a new trial which was denied by the trial court. Other pertinent facts will be related during the discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Admission of Dr. Matherne's Expert Testimony
¶ 6. Admission or exclusion of expert testimony is controlled by the trial judge's discretion, and an appellate court will not disturb that decision unless the trial court clearly abused that discretion. Sheffield v. Goodwin, 740 So.2d 854, 856(¶ 6) (Miss.1999). However, the discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. Johnston v. State, 567 So.2d 237, 238 (Miss.1990).
¶ 7. Since this issue, as well as issue three, concerns Dr. Matherne's testimony, we combine the two issues for discussion. First, Davis argues that the trial court abused its discretion when it allowed Dr. Matherne, a clinical psychologist, to testify regarding a "fist technique" which he employs young children, who are suspected of having been sexually abused, to use to help demonstrate what occurred during the incidents of sexual abuse. According to Davis, this testimony went beyond the necessary information gathering for medical treatment. He argues that this "fist technique" is scientific evidence and, as such, subject to the admissibility requirements of Frye v. United States, 293 F. 1013 (D.C.Cir.1923).
¶ 8. The State asserts that Dr. Matherne's description of the "fist technique" was only used in his effort to discover how deeply A.H. was penetrated. Moreover, the State contends that Dr. Matherne's testimony concerning the "fist technique" was more accurately a lay opinion and admissible under Rule 701 of the Mississippi Rules of Evidence. In its assessment *1024 of the expert testimony offered by Dr. Matherne, the trial court found that he would be testifying to the "fist technique" as a method of information gathering.
¶ 9. We do not find Frye applicable in the resolution of this issue. The Frye standard deals with the qualification criteria for allowing one to testify as an expert witness. See Mississippi Transp. Com'n v. McLemore, 863 So.2d 31 (Miss.2003). Here, Davis does not complain about Dr. Matherne's qualifications as an expert witness; rather, he asserts, without explaining, that the "fist technique," which in reality is nothing more than a hand demonstration, is scientific evidence which must be filtered through the criteria for expert testimony.
¶ 10. We agree with the trial court that the "fist technique" referred to by Dr. Matherne was only a form of information gathering. In his testimony, Dr. Matherne testified that the "fist technique" is a demonstration in which he asks a child to make a fist with one hand, to assume that the fist represents her private area, and to use a finger of the other hand to demonstrate what type of contact was made to her private area. He explained that he uses this procedure to assist in making a determination as to whether a physical examination of the child will be of any benefit. He testified that it was important to know whether digital penetration occurred and, if so, how deeply. He further explained that if the penetration was slight, a physical examination would not necessarily detect any trauma. We find nothing improper with the trial judge's decision to allow this testimony. This issue is without merit.
¶ 11. Secondly, Davis argues that the circuit court erred in allowing Dr. Matherne to testify to statements made to him by A.H. Davis explains that the totality of the information obtained by Dr. Matherne from A.H. was very limited and not the type which a reasonable physician would rely upon. Davis further argues that Dr. Matherne did not conduct a physical examination of A.H.
¶ 12. The trial court allowed Dr. Matherne to testify to statements that A.H. made to him during a psychological evaluation that he conducted on the child. The court allowed the testimony pursuant to Rule 803(4) of the Mississippi Rules Evidence which provides that statements made for purposes of medical diagnosis or treatment are not excluded by the hearsay rule "if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness." M.R.E. 803(4). Before admitting evidence pursuant to M.R.E. 803(4), a two-part test must be met: "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment, and... the content of the statement must be such as is reasonably relied on by a physician in treatment." Doe v. Doe, 644 So.2d 1199, 1205-06 (Miss.1994).
¶ 13. We find that the trial court did not err in admitting Dr. Matherne's testimony pursuant to Rule 803(4). Dr. Matherne testified that he conducted a one-on-one psychological evaluation of A.H. in his office on February 5, 2001. He explained that he asked A.H. a series of non-leading questions to determine whether she had been the victim of any child abuse. Dr. Matherne testified that, during the evaluation, A.H. told him that Leo touched her on or around her vaginal area and licked her in the same area.
¶ 14. Statements made by a child sexual abuse victim concerning the acts of sexual abuse, along with the identity of the perpetrator, are reasonably pertinent to treatment and are reasonably relied upon *1025 by physicians in diagnosis and treatment." See Id. at 1206. Here, Dr. Matherne's testimony concerned matters consistent with the purposes of promoting treatment of A.H. Moreover, the content of A.H.'s statement is the type of information that is reasonably relied upon by a physician in treatment. We therefore find no merit in Davis's arguments.

2. Testimony pursuant to the Tender Years Exception
¶ 15. Davis next argues that the trial court was in error when it determined that A.H. was a child of "tender years" and that the statement which she gave to Lori Ehlers, her school counselor, had substantial indicia of reliability. According to Davis, he sufficiently rebutted the presumption, without opposition from the State, that A.H. was a child of tender years. He furthers asserts that the statement made by A.H. to Lori Ehlers was contradicted by A.H.'s statement to Dr. Matherne and by the testimony of A.H. herself. He therefore concludes that Ehlers's hearsay statement was not admissible.
¶ 16. The State rebuts that Amanda was nine years old when she made the statement to Lori Ehlers; therefore, there was a presumption that she was of tender years. The State concludes that the trial court applied the correct legal standard and did not abuse its discretion.
¶ 17. Rule 803(25) of the Mississippi Rules of Evidence states:
Tender Years Exception. A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
¶ 18. Our supreme court has ruled that there is a rebuttable presumption that a child under the age of twelve is of tender years. Veasley v. State, 735 So.2d 432, 436(¶ 16) (Miss.1999). The relevant time to determine whether the tender years exception to the hearsay rule applies is the age of the child at the time the relevant statement was made rather than the age of the child at the time that testimony is given at trial. Marshall v. State, 812 So.2d 1068, 1075(¶ 20) (Miss.App.Ct.2001); McGowan v. State, 742 So.2d 1183, 1186(¶ 17) (Miss.App.Ct.1999).
¶ 19. The evidence demonstrates that A.H. was nine years old when she made the statement to Ehlers concerning her sexual abuse. Therefore, there existed a rebuttable presumption that A.H. was a child of tender years. Although Davis acknowledges that the trial court determined A.H. was competent to testify and was "very bright and articulate," Davis fails to demonstrate how he has rebutted the tender years exception.
¶ 20. Secondly, in his argument that A.H.'s statement to Ehlers lacked a substantial indicia of reliability, Davis misinterprets "reliability." Instead of pertaining to the statement's contradiction to other evidence, which will ultimately be considered by the fact finder, the reliability of the statement is determined by the surrounding circumstances in which the statement was given. Some of these factors have been listed in the comment to *1026 Rule 803(25).[1]
¶ 21. Ehlers explained that she held a private counseling session with A.H. on January 30, 2001. She testified that A.H. shared with her an incident that A.H. experienced around Christmas in 2000. Ehlers testified that Ehlers believed that she was the first person that A.H. had told about the incident. Ehlers affirmed that she never suggested to A.H. what information to relate.
¶ 22. We find that the circuit court did not err in its admission of Ehlers's testimony concerning statements made to her by A.H. We see nothing in the record which suggests that Davis presented sufficient evidence to rebut the presumption that A.H. was of tender years. The fact that A.H. may have given contradictory testimony does not in the least prove that A.H. was not of tender years at the time the incidents occurred. Further, we find nothing in the record which suggests that A.H.'s statements to Ehler were made under circumstances warranting a finding that they lacked substantial indicia of reliability. Therefore, we do not find that the circuit erred in finding that A.H.'s statement to Ehler possessed a substantial indicia of reliability. We reject as meritless Davis's contention on this issue.

3. Sufficiency of the Evidence

¶ 23. Davis argues that the trial court was in error when it denied his motions for a directed verdict and his request for a peremptory instruction, as insufficient evidence existed upon which reasonable jurors could have returned a guilty verdict as to either charge of sexual battery. The State counters that the evidence was sufficient to support each element of the two charges of sexual battery.
¶ 24. In Jefferson v. State, 818 So.2d 1099, 1110-11 (Miss.2002), our supreme court held that the standard of review for denials of motions for a directed verdict, judgment notwithstanding the verdict and a request for a peremptory instruction is the same. Each of these motions challenges the legal sufficiency of the evidence presented at trial. Id."Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion that the challenge was made in the trial court." McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citing Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987)).
¶ 25. A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of fourteen years of age if the person is twenty-four or more months older than the child. Miss.Code Ann. § 97-3-95 (Rev.2000). "Sexual penetration" includes cunnilingus, fellation, buggery or pederasty, as well as, any penetration of the genital or anal openings of another person's body by any part of a person's body. Miss.Code Ann. § 97-3-97 (Rev.2000).
¶ 26. A.H. testified that Davis came into her bedroom and felt her forehead, cheek, neck, and chest. She explained that he left the room and soon after returned. *1027 A.H. further testified that Davis pulled down her panties, started touching her private with his fingers, and thereafter, pushed his finger inside of her. She explained that after a couple of minutes, Davis began to lick her on her vagina.
¶ 27. Ehlers, A.H.'s school counselor, testified that she conducted a counseling session with A.H. after receiving a referral from a school nurse. Ehlers explained that, during a discussion with A.H. about conversations A.H. was having with A.H.'s sister, A.H. asked her about sex. Ehlers testified that A.H. told her that, shortly before or around Christmas time in December 2000, Davis came into her bedroom, rubbed her forehead, pulled down her pants, and licked her private parts.
¶ 28. Dr. Matherne testified that, during his psychological evaluation of A.H. on February 5, 2001, she shared that Davis had touched her in an uncomfortable way. According to Matherne, A.H. stated that Davis came in her bedroom in December 2000, touched her forehead, took off her panties, touched her on or around her vaginal area, and licked her on her private parts. Dr. Matherne also testified that he showed A.H. an anatomical drawing and asked her to show him where she had been touched. He explained that she marked the vaginal area in the drawing. Finally, Dr. Matherne testified that he asked A.H. to demonstrate with her index finger and fist how Davis touched her. He stated that A.H. penetrated her fist with the index finger of her other hand and rubbed it around in her fist. He stated that, based on A.H.'s demonstration, it was his opinion that there had been penetration of the vagina, but that there would be no physical evidence of damage done to the hymen because of the slight depth of the penetration.
¶ 29. Davis concedes that "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime." Cross v. State, 759 So.2d 354, 356(¶ 11) (Miss.1999). Here, we have not only the testimony of A.H. to prove Davis's guilt but the testimony of both Ehlers and Matherne who corroborated A.H.'s testimony. Consequently, we find the evidence more than sufficient to support Davis's conviction of the two counts of sexual battery.
¶ 30. The fact that the testimony of A.H., Ehlers, and Dr. Matherne may have differed in some respects does not mean that the State's evidence was deficient, for in a criminal prosecution, it is the jury's function, after hearing all the evidence and receiving the applicable law and instructions, to accept the testimony of some witnesses and reject that of others, as well as to accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980). In other words, the credibility of witnesses is not for the reviewing court. Id. Based on the evidence presented, we are satisfied that the jury, after sorting through the evidence, was justified in returning the verdict it did. We are therefore not at liberty to disturb its verdict, for reasonable and fair-minded persons could certainly find Davis guilty on this evidence.

4. New Trial
¶ 31. Davis finally argues that the trial court committed error when it denied his motion for a new trial. The State rebuts that its evidence supported the verdict and that the verdict was not against the overwhelming weight of the evidence.
¶ 32. A motion for new trial challenges the weight of the evidence and implicates the discretion of the trial court in denying the motion. A reversal is warranted *1028 only if the trial court abused its discretion in denying the motion. Edwards v. State, 800 So.2d 454, 464-65(¶ 25) (Miss.2001) (citing Sheffield v. State, 749 So.2d 123, 127(¶ 16) (Miss.1999)). "[An appellate court] accepts as true the evidence which supports the verdict and gives the benefit of all favorable inferences that may be drawn from the evidence to the prosecution." Jefferson 818 So.2d at 1112(¶ 34) (Miss.2002) (citing Edwards, 800 So.2d at 465). The appellate court will not order a new trial "unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an `unconscionable injustice.'" McDowell v. State, 813 So.2d 694, 699-700(¶ 20) (Miss.2002).
¶ 33. Considering the evidence previously described in this opinion, we are not persuaded that the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice. Consequently, we affirm the trial judge's denial of Davis's motion for a new trial.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF TWO COUNTS OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE YEARS ON EACH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] Some factors that the court should examine to determine if there is sufficient indicia of reliability are (1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.